IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| CHAD EHLINGER, ) | |
| ) | Bankruptcy No. 12-01680 |
| Debtor. ) | |

## ORDER RE: MOTION FOR ORDER TO SHOW CAUSE

This matter came before the undersigned on February 19, 2013 on Debtor's Motion for Order to Show Cause for Violation of the Automatic Stay and for Sanctions. Debtor Chad Ehlinger appeared with Attorney Gina L. Kramer. Attorney Susan M. Hess appeared for William Bullock and Bullock Ag Service. After the presentation of evidence and argument, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

### STATEMENT OF THE CASE

Debtor Chad Ehlinger seeks sanctions against William Bullock and Bullock Ag Service for violating the automatic stay. He asserts Mr. Bullock's actions in Debtor's bar on a Saturday night in October 2012 constitute a willful violation of the stay and caused him to lose income. Mr. Bullock denies that he made any attempt to collect funds in violation of the automatic stay or that his actions caused Debtor to lose business.

### FINDINGS OF FACT

Debtor filed a Chapter 7 bankruptcy petition on September 7, 2012. One of his creditors is Bullock Ag Service, Inc. – LaMotte. William Bullock is currently

the manager of the Bullock Ag Service, Inc. – Preston store.   His brother Travis Bullock manages the LaMotte store, but William Bullock managed it during the time that Debtor accrued the debt there.   Both Bullocks were involved in attempting to collect the judgment the LaMotte store obtained against Debtor prepetition.   There is no dispute that Debtor filed bankruptcy because of the Bullock prepetition collection efforts.   William Bullock acknowledged he received notice of Debtor's bankruptcy filing and was reminded by counsel to stop any collection efforts.   As a businessman, Mr. Bullock understands the effects of a bankruptcy filing and the automatic stay of further collections.

On October 27, 2012, the Saturday before Halloween, William Bullock entered Debtor's bar, the County Line, at approximately midnight.   A band was playing at the bar that night.   Mr. Bullock was on a bus tour to various area bars to attend costume contests with his wife, neighbors and friends.   The bus made an unscheduled stop at the County Line.   Mr. Bullock entered the bar for the purported purpose of using the restroom.

The parties dispute what happened next.   Debtor testified that Mr. Bullock approached the area of the bar where he could get behind the bar, but didn't actually go behind the bar.   He stated that Mr. Bullock appeared intoxicated and was talking loudly, yelling and swearing.   Debtor stated he had previously witnessed Mr. Bullock drinking and becoming louder as he became intoxicated.   Debtor testified Mr. Bullock yelled something about Debtor filing bankruptcy against him, loud enough for the entire bar to hear.   Debtor had Mr. Bullock escorted out of the bar.

William Bullock testified that he entered the bar and went straight to the restroom.   While he was there, he saw what he thought was a drug transaction between two people who had a baggie of white powder.   Mr. Bullock testified that

2

he went up to the bar to report this to someone behind the bar and to buy a soda with cash he had in his hand.   He had been drinking prior in the evening but had stopped by this time.   He stated that when he tried to report the illegal activity in the restroom to someone behind the bar, he was roughly escorted out, causing him to drop the cash in his hand.   Mr. Bullock denied yelling or talking loudly or swearing or mentioning Debtor's bankruptcy.   He stated he asked the person escorting him out if he could pick up the cash he dropped.

There is no dispute that, after Mr. Bullock was escorted out of Debtor's bar, he called the police and reported the drug transaction he said he saw in the restroom. The police arrived and looked through the bar but found no illegal activity.

Debtor testified that many of the bar patrons left after Mr. Bullock started yelling and the police arrived.   Debtor's Exhibits 1 and 2 are bank account records. Exhibit 3 is an extrapolation of Debtor's deposits from October 2012.   Debtor estimates that his receipts on October 27, 2012 were $1,035.27 lower than average receipts for nights in October after paying for a band.   Debtor's brief documents attorney fees of $2,607.50 and costs of $9.45.

Debtor offered testimony by Travis Bullock, William Bullock's brother.   He was not present at the bar on October 27, 2012.   When he heard about the circumstances from Debtor, however, he apologized to Debtor for his brother's behavior.

## CONCLUSIONS OF LAW

The filing of a bankruptcy petition automatically stays a variety of acts to collect or otherwise enforce a prepetition debt.   11 U.S.C. § 362(a).   The automatic stay stops all collection efforts and all harassment to give the debtor a breathing spell

3

from the financial pressures that led to the bankruptcy filing. In re Lynch, 415 B.R. 712, 714 (Bankr. N.D. Iowa 2009). If a creditor violates the automatic stay, the debtor is entitled to recover damages, costs and attorney fees. 11 U.S.C. § 362(k).

> To prevail under § 362(k), the debtor must show: (1) the creditor violated the automatic stay; (2) the violation was willful; and (3) the debtor was injured by the violation. See Lovett v. Honeywell, Inc., 930 F.2d 625, 628 (8th Cir. 1991). A violation is willful "when the creditor acts deliberately with knowledge of the bankruptcy petition." In re Knaus, 889 F.2d 773, 775 (8th Cir. 1989).

In re Marino, 437 B.R. 676, 678 (B.A.P. 8th Cir. 2010).

In weighing the credibility of witnesses, the court must evaluate the evidence and testimony, including variations in demeanor as well as changes in tone of voice. Anderson v. City of Bessemer, 470 U.S. 564, 575 (1985). The court can assess credibility based upon the content of the testimony as well as the court's own experience with the way people act. In re Pearce, 400 B.R. 126, 133 (Bankr. N.D. Iowa 2009). "Where two permissible views of the evidence exist, it is the responsibility of the court to weigh the evidence presented, including the credibility of the witnesses, and make a choice between conflicting testimony." Id., citing In re Waugh, 95 F.3d 706, 712 (8th Cir. 1996).

## ANALYSIS

On the issue of credibility, the Court finds Debtor's testimony is more likely to be true. He testified that Mr. Bullock appeared intoxicated and was talking loudly and swearing. He had seen Mr. Bullock get loud when he was previously intoxicated. Mr. Bullock had been drinking on a bus traveling to costume contests

4

in bars that evening. It is reasonable to conclude that by midnight he had consumed considerable alcohol. In Mr. Bullock's testimony, he specifically denied swearing or talking loudly or yelling. There is no dispute, however, that he was escorted out of the bar. The Court is not convinced he was ejected for merely reporting he witnessed a drug transaction in the restroom as he testified.

Mr. Bullock's assertion that he asked his escort if he could pick up the cash that dropped from his hand is also not credible. While a convenient way for him to explain why he was asking for his money, it simply is not a believable scenario. Rather, the Court is convinced that Mr. Bullock said something about Debtor's bankruptcy and wanting payment from Debtor for money owed, loudly enough to be heard by other customers in the bar. This constitutes a willful violation of the automatic stay.

The final issue is the amount of damages. Debtor produced a summary of deposits for the month of October. The deposit after the occurrences on October 27, 2012 is approximately $1,000 lower than the rest of the month. The one-month history, however, is barely sufficient for a comparison. The Court also notes that only a couple of hours remained of the bar's open hours when Mr. Bullock appeared that night.

In conclusion, the Court finds William Bullock willfully violated the automatic stay by his actions on October 27, 2012. Based on the record presented, the Court awards actual damages of $500. Having reviewed the attorney fee statement attached to Debtor's brief, the Court further awards attorney fees of $500.

**WHEREFORE**, Debtor's Motion for Order to Show Cause for Violation of the Automatic Stay and for Sanctions is GRANTED.

5

**FURTHER**, Debtor Chad Ehlinger is entitled to actual damages of $500 and attorney fees of $500, for a total of $1,000, payable by William Bullock.

**FURTHER**, judgment shall enter accordingly.

Dated and Entered:  March 19, 2013

_____
PAUL J. KILBURG
U.S. BANKRUPTCY JUDGE